UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRED MCCLURE, Derivatively on Behalf of RUSSELL COMMODITY STRATEGIES FUND, RUSSELL EMERGING MARKETS FUND, RUSSELL GLOBAL EQUITY FUND, RUSSELL GLOBAL INFRASTRUCTURE FUND, RUSSELL GLOBAL OPPORTUNISTIC CREDIT FUND, RUSSELL INTERNATIONAL DEVELOPED MARKETS FUND, RUSSELL MULTI-STRATEGY ALTERNATIVE FUND, RUSSELL STRATEGIC BOND FUND, RUSSELL U.S. SMALL CAP EQUITY FUND, and RUSSELL GLOBAL REAL ESTATE SECURITIES FUND, | Civil Action No. |
| Plaintiff, | |
| v. | |
| RUSSELL INVESTMENT MANAGEMENT COMPANY, | |
| Defendant. | DEMAND FOR JURY TRIAL |

## VERIFIED COMPLAINT

Plaintiff Fred McClure, by his undersigned attorneys, brings this verified complaint against defendant Russell Investment Management Company ("RIMCo") and pleads as follows:

### NATURE OF THE ACTION

1.     This is a derivative action brought by plaintiff on behalf of Russell Commodity Strategies Fund ("Commodity Strategies"), Russell Emerging Markets Fund ("Emerging Markets"), Russell Global Equity Fund ("Global Equity"), Russell Global Infrastructure Fund ("Global Infrastructure"), Russell Global Opportunistic Credit Fund ("Global Opportunistic Credit"), Russell International Developed Markets Fund ("International Developed Markets"), Russell Multi-Strategy Alternative Fund ("Multi-Strategy Alternative"), Russell Strategic Bond

Fund ("Strategic Bond"), Russell U.S. Small Cap Equity Fund ("U.S. Small Cap Equity"), and Russell Global Real Estate Securities Fund ("Global Real Estate") (collectively, the "Russell Funds") against defendant RIMCo, pursuant to section 36(b) of the Investment Company Act of 1940 ("ICA"), as amended 15 U.S.C. §80a-35(b) ("Section 36(b)").

2.     Defendant RIMCo serves as the investment manager/adviser to the Russell Funds for which defendant RIMCo charges the Russell Funds fees.  In fiscal year 2012 alone, defendant RIMCo was paid a total of over *$164 million* in investment management fees from the Russell Funds.  Of that sum, defendant RIMCo paid the Russell Funds' Money Managers *$57 million* for sub-advisory services, retaining *$107 million* for itself.  Despite delegating a substantial portion of its investment management duties to the Money Managers and performing minimal additional work that was predominately supervisory in nature, defendant RIMCo charged fees that were nearly *290%* greater than the investment management fees that were paid to the Money Managers.  Moreover, as further detailed herein, defendant RIMCo's retained fees represented over *187%* of the fees paid to the Money Managers.

3.     Defendant RIMCo breached its fiduciary duty under Section 36(b) by charging the Russell Funds excessive investment management fees.  Defendant RIMCo's fees are illegal and improper as shown by: (i) the nature and quality of services provided to the Russell Funds and their security holders in exchange for the investment management fees; (ii) the failure of defendant RIMCo to adequately pass economies-of-scale savings on to the Russell Funds and their security holders, and the retention of those economies-of-scale savings by defendant RIMCo; (iii) the costs and profitability of defendant RIMCo's investment management services; and (iv) the failure of the Russell Funds' Board of Trustees (the "Board") to exercise the requisite

level of care and conscientiousness in approving the Advisory Agreement dated January 1, 1999

(the "Advisory Agreement") with defendant RIMCo and the fees paid pursuant thereto.

4.      Pursuant to Section 36(b)(3), plaintiff seeks on behalf of the Russell Funds, the

damages resulting from the breaches of fiduciary duties by defendant RIMCo, including the

amount of excessive compensation and payments received by defendant RIMCo and the

rescission of the contracts that form the basis for the excessive and illegal fees.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. §80a-43, 15

U.S.C. §80a-35(b)(5), and 28 U.S.C. §1331.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 and 15 U.S.C.

§80a-43 as Russell Investment Company ("RIC") is a Massachusetts business trust and a

substantial part of the events or omissions that give rise to plaintiff's claims occurred in this

District.[1]

**PARTIES**

**Plaintiff**

7.      Plaintiff Fred McClure owns shares of the Russell Funds.

**Nominal Defendants**

8.      Nominal Defendant Commodity Strategies is an RIC fund with net assets of $1.3

billion as of April 30, 2013.   Commodity Strategies invests in commodity index-linked

securities, other commodity-linked securities, derivative instruments, cash, and fixed income

---

[1] RIC is an open-end management investment company under the ICA and is comprised of forty-two mutual funds, including Commodity Strategies, Emerging Markets, Global Equity, Global Infrastructure, Global Opportunistic Credit, International Developed Markets, Multi-Strategy Alternative, Strategic Bond, U.S. Small Cap Equity, and Global Real Estate.

securities that together are intended to provide exposure to the performance of the collateralized commodity futures market. Commodity Strategies has five different share classes for investment: A, C, E, S, and Y. Commodity Strategies' principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

9.     Nominal Defendant Emerging Markets is an RIC fund with net assets of $2.1 billion as of April 30, 2013. Emerging Markets invests at least 80% of the value of its net assets plus borrowings in emerging market companies. Emerging Markets has five different share classes for investment: A, C, E, S, and Y. Emerging Markets' principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

10.     Nominal Defendant Global Equity is an RIC fund with net assets of $3 billion as of April 30, 2013. Global Equity invests at least 80% of the value of its net assets plus borrowings in equity securities of companies economically tied to a number of countries around the world. Global Equity has five different share classes for investment: A, C, E, S, and Y. Global Equity's principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

11.     Nominal Defendant Global Infrastructure is an RIC fund with net assets of $1 billion as of April 30, 2013. Global Infrastructure invests at least 80% of its net assets plus borrowings in securities issued by companies that are engaged in the infrastructure business, including, but not limited to, systems and networks of energy, transportation, communication, and other services required for the normal function of society. Global Infrastructure has five different share classes for investment: A, C, E, S, and Y. Global Infrastructure's principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

12.     Nominal Defendant Global Opportunistic Credit is an RIC fund with net assets of $886 million as of April 30, 2013.  Global Opportunistic Credit invests at least 80% of the value of its net assets plus borrowings in bonds, including high yield debt securities, emerging markets debt securities, U.S. and non-U.S. corporate debt securities, fixed income securities issued or guaranteed by the U.S. government or by non-U.S. governments, and other investment grade securities.  Global Opportunistic Credit has five different share classes for investment: A, C, E, S, and Y.  Global Opportunistic Credit's principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

13.     Nominal Defendant International Developed Markets is an RIC fund with net assets of $4.7 billion as of April 30, 2013.  International Developed Markets invests at least 80% of the value of its net assets plus borrowings in developed markets that are located in countries other than the United States International Developed Markets invests principally in equity securities, including common stocks and preferred stocks. International Developed Markets has six different share classes for investment: A, C, E, I, S, and Y.  International Developed Markets' principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

14.     Nominal Defendant Multi-Strategy Alternative is an RIC fund with net assets of $854 million as of April 30, 2013.  Multi-Strategy Alternative invests in a broad range of instruments, markets, and asset classes economically tied to U.S., foreign, and emerging markets, and employs a diverse range of alternative investment strategies, including relative value, event driven, equity hedge, and tactical trading strategies.  Multi-Strategy Alternative has five different share classes for investment: A, C, E, S, and Y.  Multi-Strategy Alternative's principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

15.     Nominal Defendant Strategic Bond is an RIC fund with net assets of $8.4 billion as of April 30, 2013.  Strategic Bond invests at least 80% of the value of its net assets plus borrowings for investment purposes in bonds, including mortgage related securities, U.S. and non-U.S. corporate debt securities, fixed income securities, and other asset-backed securities. Strategic Bond has six different share classes for investment: A, C, E, I, S, and Y.  Strategic Bond's principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

16.     Nominal Defendant U.S. Small Cap Equity is an RIC fund with net assets of $1.5 billion as of April 30, 2013.  U.S. Small Cap Equity invests at least 80% of the value of its net assets plus borrowings for investment purposes in small capitalization equity securities economically tied to the United States.  U.S. Small Cap Equity has six different share classes for investment: A, C, E, I, S, and Y.  U.S. Small Cap Equity's principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

17.     Nominal Defendant Global Real Estate is an RIC fund with net assets of $1.8 billion as of April 30, 2013.  Global Real Estate invests at least 80% of the value of its net assets plus borrowings for investment purposes in real estate securities. Global Real Estate has five different share classes for investment: A, C, E, S, and Y.  Global Real Estate's principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

**Defendant**

18.     Defendant RIMCo is an investment adviser that serves registered companies under the ICA.  Pursuant to the Advisory Agreement, defendant RIMCo provides or oversees the provision of all investment advisory and portfolio management services for the Russell Funds.

RIMCo is a Washington corporation with principal executive offices located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

### BACKGROUND INFORMATION ABOUT THE INVESTMENT MANAGEMENT INDUSTRY AND THE PURPOSE OF SECTION 36(b)

19.     A mutual fund is typically created and managed by a pre-existing organization known as an investment adviser that generally supervises the daily operation of the fund and often selects affiliated persons to serve on the fund's board of directors.   Congress recognized as early as 1935 that because a typical mutual fund is organized by its investment adviser which provides it with almost all of its management services, and because its shares are bought by investors who rely on that service, a mutual fund cannot, as a practical matter, sever its relationship with the adviser.

20.     Because of this relationship in the mutual fund industry, there is no arm's-length bargaining.   As a result, in 1940, Congress enacted the ICA.   The conflicts in the inherent structure of mutual funds, including those at issue here, exemplify the concern raised in the preamble to the ICA that "investment companies are organized, operated, [and] managed, … in the interest of … investment advisers, … rather than in the interest of [shareholders]."   As stated in the ICA:

> [T]he *national public interest and the interest of investors are adversely affected ... when investment companies are organized, operated, [and] managed ... in the interest of ... investment advisers, ... rather than in the interest of [shareholders]* ... [or] when investment companies ... are not subjected to adequate independent scrutiny.

ICA section 1(b)(2), (5); 15 U.S.C. §80a-1(b).

21.     During the 1960s, Congress realized that investment advisers to equity mutual funds were charging those funds excessive fees.   Thus, Congress added Section 36(b) to the ICA

in 1970.   This provision created a federal cause of action for breach of fiduciary duty by investment advisers.  Section 36(b) states in pertinent part:

> [T]he investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. ***An action may be brought under this subsection** ... **by a security holder of such registered investment company on behalf of such company, against such investment advisers, or an affiliated person of such investment advisor** ... **for breach of fiduciary duty in respect to such compensation*** or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

### DEFENDANT RIMCO CHARGED EXCESSIVE FEES

22.   While Section 36(b) does not set forth a list of factors to be considered in determining whether an investment adviser has breached its fiduciary duty with respect to its receipt of compensation, the test for determining whether fee compensation paid to defendant RIMCo violates Section 36(b) is essentially whether the fee schedule represents a charge within the range of what would have been negotiated at arm's-length in light of all the surrounding circumstances.   Thus, an adviser violates Section 36(b) if it charges a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining.

23.   The investment management fees RIMCo charged the Russell Funds were so excessive that they were in breach of defendant RIMCo's Section 36(b) fiduciary duty to the Russell Funds with respect to such compensation.   The excessiveness of the fees are demonstrated by, inter alia: (i) the nature and quality of services provided to the Russell Funds and its security holders in exchange for the investment management fees; (ii) the failure of defendant RIMCo to adequately pass economies-of-scale savings on to the Russell Funds and their security holders, and the retention of those economies-of-scale savings by defendant

RIMCo; (iii) the costs and profitability of defendant RIMCo's investment management services; and (iv) the failure of the Board to exercise the requisite level of care and conscientiousness in approving the Advisory Agreement with defendant RIMCo and the fees paid pursuant thereto.

**The Nature and Quality of the Investment Management Services Performed by Defendant RIMCo Do Not Justify Defendant RIMCo's Fee**

24.     On January 1, 1999, defendant RIMCo entered into the Advisory Agreement with the Russell Funds.   The Advisory Agreement tasks defendant RIMCo with "supervisory responsibility for the general management and investment of the Trust's assets and securities portfolios" and "investment discretion to make all determinations with respect to the investment of Sub-Trust assets not assigned to a Money Manager."  As stated in the Advisory Agreement, defendant RIMCo must fulfill the following general responsibilities for the Russell Funds:

> The Manager shall, subject to and in accordance with the investment objectives and policies of the Trust and each Sub-Trust and any directions which the Trust's Board of Trustees may issue to the Manager, have: *(i) overall supervisory responsibility for the general management and investment of the Trust's assets and securities portfolios; and (ii) full investment discretion to make all determinations with respect to the investment of Sub-Trust assets not assigned to a Money Manager.*

> The Manager shall develop overall investment programs and strategies for each Sub-Trust, or segments thereof, shall revise such programs as necessary, and shall monitor and report periodically to the Board of Trustees concerning the implementation of the programs.

> The Manager shall research and evaluate Money Managers and shall advise the Board of Trustees of the Trust of the Money Managers which the Manager believes are best suited to invest the assets of each Sub-Trust; shall monitor and evaluate the investment performance of each Money Manager employed by the Trust; shall determine the portion of each Sub-Trust's assets to be managed by each Money Manager; shall recommend changes or additions of Money Managers when appropriate; shall coordinate the investment activities of the Money Managers; and acting as a fiduciary for the Trust shall compensate the Money Managers.

> The Manager shall render to the Trust's Board of Trustees such periodic reports concerning the Trust's and Sub-Trust's business and investments as the Board of Trustees shall reasonably request.

25.    Rather than providing the majority of the investment management services directly to the Russell Funds, defendant RIMCo subcontracts with others to provide the services at a fraction of the fee charged to the Russell Funds.  All of the Russell Funds' assets are managed by the Money Managers, leaving RIMCo largely without any asset management responsibilities.  According to the Advisory Agreement, the Money Managers "shall have full investment discretion and shall make all determinations with respect to the investment of a Sub-Trust's assets assigned to the Money Manager and the purchase and sale of portfolio securities with those assets, and such steps as may be necessary to implement its decision."  The following chart shows the various Money Managers RIMCo subcontracts with in support of managing the Russell Funds' assets and demonstrates the percentage of each of the Russell Funds' assets that are managed by these Money Managers:

| Fund | Money Managers | Percent of Assets Managed |
|------|----------------|---------------------------|
| Russell Commodity Strategies | Goldman Sachs Asset Management, L.P. | 40% |
| | Credit Suisse Asset Management, LLC | 40% |
| | CoreCommodity Management, LLC (formerly Jefferies Asset Management, LLC) | 20% |
| | **Total** | **100%** |
| Russell Emerging Markets | Harding Loevner LP | 15% |
| | UBS Global Asset Management (Americas), Inc. | 10% |
| | Genesis Asset Managers, LLP | 15% |
| | Numeric Investors, LLC | 15% |
| | Victoria 1522 Investments, LP | 7% |
| | Westwood Management Corporation | 7% |
| | Alliance Bernstein, L.P. | 16% |
| | Delaware Management Company | 15% |
| | **Total** | **100%** |
| Russell Global Equity | T. Rowe Price Associates, Inc. | 21% |
| | MFS Institutional Advisors, Inc. | 26% |
| | Harris Associates, L.P. | 21% |
| | Sanders Capital, LLC | 19% |

| | | |
|---|---|---|
| | Polaris Capital Management, LLC | 13% |
| | **Total** | **100%** |
| Russell Global Infrastructure | Cohen & Steers Capital Management, Inc. | 20% |
| | Nuveen Asset Management, LLC | 40% |
| | Colonial First State Asset Management (Australia) Limited | 40% |
| | **Total** | **100%** |
| Russell Global Opportunistic Credit | DDJ Capital Management, LLC | 20% |
| | Lazard Asset Management, LLC | 20% |
| | Oaktree Capital Management, L.P. | 30% |
| | Stone Harbor Investment Partners, L.P. | 30% |
| | **Total** | **100%** |
| Russell Global Real Estate | AEW Capital Management, L.P. | 35% |
| | Cohen & Steers Capital Management, Inc. | 30% |
| | INVESCO Advisers, Inc. | 35% |
| | **Total** | **100%** |
| Russell International Developed Markets | Driehaus Capital Management LLC | 10% |
| | William Blair & Company, LLC | 12% |
| | MFS Institutional Advisors, Inc. | 20% |
| | AQR Capital Management, LLC | 17% |
| | del Rey Global Investors, LLC | 10% |
| | Barrow, Hanley, Mewhinney & Strauss, LLC | 15% |
| | Pzena Investment Management, LLC | 16% |
| | **Total** | **100%** |
| Russell Multi-Strategy Alternative | Amundi Investments US, LLC | 8% |
| | DCI, LLC | 5% |
| | Pacific Investment Management Company, LLC | 9% |
| | Brigade Capital Management, LLC | 11% |
| | TCW/Scoggin, LLC | 8% |
| | Lazard Asset Management, LLC | 8% |
| | Levin Capital Strategies, L.P. | 8% |
| | Omega Advisors | 13% |
| | AQR Capital Management, LLC | 9% |
| | Galtere Ltd. and Galtera, N.A | 8% |
| | The Cambridge Strategy (Asset Management) Limited | 8% |
| | 2100 Xenon Group, LLC | 5% |
| | **Total** | **100%** |
| | | |

| | | |
|---|---|---|
| | Colchester Global Investors Limited | 8% |
| | Logan Circle Partners, L.P. | 20% |
| | Macro Currency Group - an Investment Group within Principal Global Investors LLC | 8% |
| Russell Strategic Bond | Metropolitan West Asset Management LCC | 20% |
| | Pacific Investment Management Company, LLC | 20% |
| | Wellington Management Company, LLP | 20% |
| | Brookfield Investment Management, Inc. | 5% |
| | **Total** | **100%** |
| | EAM Investors, LLC | 5% |
| | Falcon Point Capital, LLC | 10% |
| | Next Century Growth Investors, LLC | 8% |
| | Ranger Investment Management, L.P. | 13% |
| | ClariVest Asset Management, LLC | 10% |
| Russell US Small Cap Equity | PENN Capital Management Company, Inc. | 5% |
| | Cardinal Capital Management, LLC | 5% |
| | Chartwell Investment Partners | 13% |
| | DePrince, Race & Zollo, Inc. | 13% |
| | Jacobs Levy Equity Management, Inc. | 13% |
| | Signia Capital Management, LLC | 8% |
| | **Total** | **100%** |

26.     In addition to limiting RIMCo's role to general oversight and supervising the Money Managers, the Advisory Agreement limits RIMCo's exposure to liability.  In particular, RIMCo is not liable for any investment decision made by a Money Manager.  The Advisory Agreement contains the following language regarding RIMCo's liability exposure as it pertains to assets managed by a Money Manager:

> The Trust intends to appoint one or more persons or companies ("Money Manager[s]") for each of the Sub-Trusts or segments thereof, and each Money Manager shall have full investment discretion and shall make all determinations with respect to the investment of a Sub-Trust's assets assigned to the Money Manager and the purchase and sale of portfolio securities with those assets, and such steps as may be necessary to implement its decision. *The Manager shall not be responsible or liable for the investment merits of any decision by a Money Manager to purchase, hold, or sell a security for a Sub-Trust portfolio*.

- 12 -

27.     Defendant RIMCo shares its supervisory role with the Board, which further limits defendant RIMCo's responsibilities.  According to the Statement of Additional Information as supplemented through September 12, 2013, the Board oversees the Russell Funds' activities, monitors the quality of services provided to the Russell Funds, and reviews the Russell Funds' investment performance.

28.     RIMCo subcontracting its investment management duties to a Money Manager has no effect on the management fees it charges the Russell Funds.  Rather, the management fees are based on a stated percentage of the Russell Funds' average daily net asset value.  As such, the investment management fees are not based on the services actually rendered or defendant RIMCo's costs in providing services to the Russell Funds.  For certain funds, defendant RIMCo has agreed to waive a portion of its advisory fees, resulting in slightly lower effective rates for those funds.  However, these waivers are just designed to create the illusion of savings for fund holders.  Defendant RIMCo has only agreed to fee waivers for select funds and, where they exist, the fee reductions are minimal.  The funds that receive fee waivers still pay fees that are drastically out of proportion to the services provided by defendant RIMCo.  The Russell Funds paid defendant RIMCo over *$164 million* in advisory fees for the fiscal year ended October 31, 2012.  Defendant RIMCo's effective fee schedule with the Russell Funds including waivers is as follows:

| Fund | Management Fee Percentage (including waivers) | Fees Paid to RIMCo (including waivers) |
|---|---|---|
| Russell Commodity Strategies | 1.00% | $9,009,828 |
| Russell Emerging Markets | 1.15% | $20,718,934 |
| Russell Global Equity | 0.95% | $25,787,348 |
| Russell Global Infrastructure | 1.00% | $7,879,059 |
| Russell Global Real Estate | 0.80% | $12,733,122 |
| Russell Global Opportunistic Credit | 0.73% | $5,839,672 |

| | | |
|---|---|---|
| Russell International Developed Markets | 0.70% | $30,746,258 |
| Russell Multi-Strategy Alternative | 1.50% | $2,207,222 |
| Russell Strategic Bond | 0.50% | $39,575,097 |
| Russell US Small Cap Equity | 0.70% | $10,093,799 |
| | | **$164,590,339** |

29.     In exchange for their services, defendant RIMCo in turn pays fees to the Money Managers.  While the Russell Funds paid RIMCo over *$164 million* in advisory fees for the fiscal year ended October 31, 2012, the Money Managers were paid just *$57 million*.  In 2012, defendant RIMCo retained *$107 million* of the fees paid to it by the Russell Funds in exchange for its supervisory services.  The retained fees represented over *187%* of the fees paid to the Money Managers for actually managing the Russell Funds' portfolios.  The following table reflects the material difference in the fees defendant RIMCo charged the Russell Funds, and the fees defendant RIMCo paid the Money Managers for substantially the same service in 2012:

| Fund | Year | Fees Paid to RIMCo (Net of Waivers) | Fees Paid to Money Managers | Fees Retained by RIMCo | RIMCo's Fees as a Percentage of Money Managers' Fees |
|---|---|---|---|---|---|
| Russell Commodity Strategies | 2012 | $9,009,828 | $3,655,007 | $5,354,821 | 147% |
| Russell Emerging Markets | 2012 | $20,718,934 | $7,750,920 | $12,968,014 | 167% |
| Russell Global Equity | 2012 | $25,787,348 | $8,679,181 | $17,108,167 | 197% |
| Russell Global Infrastructure | 2012 | $7,879,059 | $2,959,039 | $4,920,020 | 166% |
| Russell Global Opportunistic Credit | 2012 | $5,839,672 | $3,165,338 | $2,674,334 | 84% |
| Russell Global Real Estate | 2012 | $12,733,122 | $4,751,339 | $7,981,783 | 168% |
| Russell International Developed Markets | 2012 | $30,746,258 | $12,250,403 | $18,495,855 | 151% |
| Russell Multi-Strategy Alternative | 2012 | $2,207,222 | $1,358,078 | $849,144 | 63% |
| Russell Strategic Bond | 2012 | $39,575,097 | $7,078,549 | $32,496,548 | 459% |

| | | | | | |
|---|---|---|---|---|---|
| Russell US Small Cap Equity | 2012 | $10,093,799 | $5,697,140 | $4,396,659 | 77% |
| **Total** | **-** | **$164,590,339** | **$57,344,994** | **$107,245,345** | **187%** |

30.     Accordingly, despite the fact that the Money Managers manage 100% of each of the Russell Funds' assets, the Money Managers charge defendant RIMCo fees that represent just a small fraction of the total fees that defendant RIMCo charges the Russell Funds.  Although, the Advisory Agreement tasks defendant RIMCo with the responsibility of assigning, overseeing, and evaluating the assets managed by the Money Managers, these responsibilities are minimal compared to the day-to-day responsibilities of managing the Russell Funds' portfolio.  As such, defendant RIMCo's retained fees should be proportionately smaller than the fees paid to the Money Managers.  As discussed above, this is plainly not the case.

**Economies of Scale Enjoyed in Connection with the Investment Management Services Were Not Passed on to the Russell Funds as Required by Section 36(b)**

31.     The legislative history of Section 36(b) recognizes that an investment adviser's failure to pass on economies of scale to the fund is one of the principal causes of excessive fees.  Economies of scale are created when assets under management increase more quickly than the cost of advising and managing those assets.  The work required to operate a mutual fund does not increase proportionately with the assets under management.  Investment management efforts, the most important (and most expensive) input into portfolio management, do not increase along with portfolio size.  A portfolio manager can invest $5 billion nearly as easily as $1 billion, and $20 billion nearly as easily as $10 billion.  Economies of scale should lead to lower fees as assets under management increase.

32.     The existence of economies of scale in the mutual fund industry has been confirmed by both the U.S. Securities and Exchange Commission and the Governmental

Accounting Office.  Both conducted in-depth studies of mutual fund fees in 2000, and both concluded that economies of scale exist in the provision of management services.

33.     Although significant economies of scale exist for the Russell Funds, the associated cost savings largely have been appropriated for the benefit of defendant RIMCo rather than being shared with the Russell Funds.  Defendant RIMCo's fee schedule is not designed for the Russell Funds and their security holders to take advantage of the savings arising from economies of scale, as evidenced by the fact that defendant RIMCo charges the Russell Funds flat rate fees based on net assets rather than using tiered fee schedules.  Although a flat rate fee schedule might be appropriate for a fund with a relatively small pool of assets, eight of the ten Russell Funds discussed herein have more than *$1 billion* assets and all ten funds have more than *$500 million* in assets.  The Russell Funds maintain net assets as follows:

| Russell Funds | Net Assets (as of April 30, 2013) |
| --- | --- |
| Russell Strategic Bond | $8.4 billion |
| Russell International Developed Markets | $4.7 billion |
| Russell Global Equity | $3.0 billion |
| Russell Emerging Markets | $2.1 billion |
| Global Real Estate | $1.9 billion |
| Russell US Small Cap Equity | $1.5 billion |
| Russell Commodity Strategies | $1.3 billion |
| Russell Global Infrastructure | $1.0 billion |
| Russell Global Opportunistic Credit | $886 million |
| Russell Multi-Strategy Alternative | $854 million |

34.     As further evidence that defendant RIMCo is not sharing the savings it is enjoying from the Russell Funds' economies of scale, the following table demonstrates that defendant RIMCo has charged the same fee rates to the Russell Funds since first initiating its management services despite the Russell Funds' significant growth through additional investments:

| Fund | Management Fee Percentage | Net Assets at Initiation | Net Assets at April 30, 2013 | Asset Growth since Initiation |
|---|---|---|---|---|
| Russell Strategic Bond | 0.50% | $438 million | $8.4 billion | 1815% |
| Russell Emerging Markets | 1.15% | $282 million | $2.1 billion | 635% |
| Russell International Developed Markets | 0.70% | $1.1 billion | $4.7 million | 340% |
| Russell Global Equity | 0.95% | $907 million | $3.0 billion | 233% |
| Russell U.S. Small Cap Equity | 0.70% | $741 million | $1.5 billion | 107% |
| Russell Global Infrastructure | 1.25% | $624 million | $1.0 billion | 67% |
| Russell Global Opportunistic Credit | 1.00% | $620 million | $886 million | 43% |
| Russell Commodity Strategies | 1.25% | $996 million | $1.3 billion | 30% |
| Russell Multi-Strategy Alternative | 1.50% | $735 million | $854 million | 16% |

35.     The investment management fees paid to defendant RIMCo are disproportionate to the value of services rendered, and therefore excessive, especially when considering the excess profits resulting from economies of scale.  The economies of scale enjoyed by defendant RIMCo with respect to the Russell Funds have not been adequately shared with the Russell Funds, as required by Section 36(b), in breach of defendant RIMCo's Section 36(b) fiduciary duty to the Russell Funds with respect to such compensation.

**The Costs and Profitability of Providing Investment Management Services Does Not Justify Defendant RIMCo's Excessive Fees**

36.     Defendant RIMCo's incremental costs of providing management services to the Russell Funds are not substantial, while the additional fees received by defendant RIMCo are unreasonable and hugely excessive given that the nature, quality, and level of the services remain the same as assets under management grow.   While fees of 1.5% or less may seem

inconsequential, these percentages translate into substantial fees when applied to the Russell Funds' assets in the billions of dollars.  In fiscal year 2012 alone, defendant RIMCo was paid a total of over *$164 million* in investment management fees from the Russell Funds.  Of that sum, defendant RIMCo paid the Russell Funds' Money Managers *$52 million* for sub-advisory services, retaining *$99 million* for itself.  Despite delegating a substantial portion of its investment management duties to the Money Managers and performing minimal additional work that was predominately supervisory in nature, defendant RIMCo charged fees that were over *290%* greater than the investment management fees that were paid to the Money Managers. Moreover, as discussed above, defendant RIMCo's retained fees represented over *190%* of the fees paid to the Money Managers.

37.     The true cost of investment management services should correlate to the fees charged by the Money Managers.  In fact, as external, for-profit sub-advisers, the fees charged by the Money Managers to defendant RIMCo include the Money Managers' costs plus, presumably, a reasonable profit.  While the Money Managers' fees are much smaller than defendant RIMCo's fee, upon information and belief, the Money Managers still make a profit.

38.     Defendant RIMCo's markup for its investment management resulted in fees that are disproportionate to services rendered, could not be the product of negotiations conducted at arm's-length, and therefore constitute a breach of defendant RIMCo's fiduciary duty to the Russell Funds with respect to the receipt of such compensation.

**The Board Was Not Acting Conscientiously in Approving Defendant RIMCo's Investment Management Fees**

39.     Fund trustees have a fiduciary duty to mutual funds and to their shareholders (who individually have no power to negotiate such fees for the funds) to negotiate fees that are both beneficial to the mutual funds and are comparable to fees that would be negotiated at arm's-

length.  For the reasons discussed herein, the Board was not acting consistent with its fiduciary duty when it approved defendant RIMCo's excessive investment management fees, and allowed these fees to continue.

40.     Each of the funds in the Russell Funds complex, which is comprised of fifty-three funds, is governed by the Board.  The Board is composed of nine trustees, who meet, oversee, and make decisions for all the funds in the Russell Funds complex.  The Board's members are compensated for their services.  As a result of the compensation they receive, Board membership in the Russell Funds complex is a lucrative part-time job for the fund trustees.  In 2012 alone, the trustees for the funds in the Russell Funds complex received total compensation in the following amounts[2]:

| Trustee | Total Compensation in Fiscal Year Ending October 31, 2012 |
| --- | --- |
| Thaddas L. Alston | $142,000 |
| Kristianne Blake | $212,500 |
| Cheryl Burgermeister | $12,500[3] |
| Daniel P. Connealy | $123,833 |
| Jonathan Fine | $124,500 |
| Raymond P. Tennison, Jr. | $143,500 |
| Jack R. Thompson | $140,500 |
| Julie W. Weston | $137,500 |

41.     The Board has a separate and distinct fiduciary duty to each mutual fund in the Russell Funds complex to enter into serious and substantive negotiations with respect to all fees charged by advisers, including defendant RIMCo.  Correspondingly, defendant RIMCo has a reciprocal fiduciary duty to each mutual fund under its management to assure that the fees it

---

[2] Sandra Cavanaugh ("Cavanaugh") who serves as RIC's President, Chief Executive Officer ("CEO"), and a trustee on the Board is not compensated by the Russell Funds for her services as a trustee.

[3] Cheryl Burgermeister joined the Board in September 2012.

charges for services rendered are reasonably related to the services provided and correspond with fees that would be charged in an arm's-length negotiation.

42.     The trustees are supposed to be "watchdogs" for the Russell Funds' security holders.  The trustees, however, cannot properly monitor the Russell Funds because they are also charged with the oversight of fifty-three funds in the Russell Funds complex.  Each fund has its own lengthy prospectus, regulatory filings, and compliance issues to review.

43.     Furthermore, even if statutorily "non-interested," the trustees are in all practical respects dominated and unduly influenced by defendant RIMCo in reviewing the fees paid by the Russell Funds and their security holders.  The trustees' continuation in the role of an independent trustee from year-to-year, and the compensation they earn, is at least partially dependent on the continued good will and support of defendant RIMCo and Cavanaugh, who serves as RIC's President and CEO, and a trustee on the Board, and as a director of defendant RIMCo.

44.     As discussed above, truly independent boards acting conscientiously would not have tolerated the investment management fees charged by defendant RIMCo if they had obtained adequate information regarding, among other things: (i) the services provided by the Money Managers, and the fees the Money Managers charged for such services, as compared to the investment management fees that defendant RIMCo charged for its minimal services; (ii) the economies of scale enjoyed by defendant RIMCo; and (iii) the profitability of the Russell Funds to defendant RIMCo.

45.     Moreover, a board acting conscientiously would not disregard that a majority of the Russell Funds pay among the highest advisory fees of their peer funds.  According to the Russell Funds' 2012 Annual Report dated October 31, 2012:

> With respect to the Funds' Advisory Fees, the Third-Party Information showed that the **Russell U.S. Growth Fund, Russell U.S. Value Fund, Russell Tax-**

*Managed U.S. Large Cap Fund, Russell Tax-Managed U.S. Mid & Small Cap Fund, Russell Global Equity Fund, Russell Emerging Markets Fund, Russell Strategic Bond Fund, Russell Short Duration Bond Fund, Russell Global Opportunistic Credit Fund, Russell Commodity Strategies Fund, Russell Global Infrastructure Fund and the Russell Global Real Estate Securities Fund each had an Advisory Fee which on a contractual basis, on an actual basis (i.e., giving effect to any voluntary fee waivers implemented by RIMCo and the advisers to such Fund's Comparable Funds) or on both a contractual and actual basis was ranked in the fourth or fifth quintile of its Expense Universe* while each other Fund had an Advisory Fee which was ranked in the first, second or third quintile of its Expense Universe. In these rankings, the first quintile represents funds with the lowest investment advisory fees among funds in the Expense Universe and the *fifth quintile represents funds with the highest investment advisory fees among the Expense Universe funds*. The comparisons were based upon the latest fiscal years for the Expense Universe funds.

46.     As further evidence that the Board was not acting consciously when it approved defendant RIMCo's advisory fees for the Russell Funds, the Board approved defendant RIMCo's advisory fees for the Russell Funds despite the majority of the Russell Funds underperforming their primary benchmarks.  For example:

- Commodity Strategies underperformed its primary benchmark, the Down Jones-UBS Commodity Total Return Index SM, in the one-year period and since its inception in July 2010;

- Global Equity underperformed its primary benchmarks, the Russell Developed Large Cap Index Net and MSCI World Index Net, in the one-year period, the five-year period, and the ten-year period;

- Global Opportunistic Credit underperformed its primary benchmarks, the Bank of America Merrill Lynch Global High Yield Index (Hedged) and the Bank of America Merrill Lynch Global High Yield Index, in the one-year period and since its inception in October 2010;

- International Developed Markets underperformed its primary benchmarks, the Russell Developed ex-U.S. Large Cap Index Net and MSCI EAFE Index Net, in the five-year period and the ten-year;

- Multi-Strategy Alternative underperformed its primary benchmarks, the Barclays Capital U.S. 1-3 Month Treasury Bill Index and HFRX Equal Weighted Strategies Index, since its inception in August 2012; and

- U.S. Small Cap Equity underperformed its primary benchmarks, the Russell 2000 Index and the Russell 2500 Index, in the one-year period, the five-year period, and the ten-year period.

47.     Accordingly, given the reasons above, the Board did not act conscientiously and therefore breached its fiduciary duty when it approved defendant RIMCo's investment management fees.    The Board's lack of conscientiousness resulted in fees that are disproportionate to the value of the services rendered.

## COUNT I

### Against Defendant RIMCo Pursuant to Section 36(b)
### Derivatively on Behalf of the Russell Funds
### (Investment Management Fees)

48.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

49.     Defendant RIMCo had a fiduciary duty to the Russell Funds and their investors with respect to the receipt of compensation for services and payments of a material nature made by and to defendant RIMCo.

50.     The fees charged by defendant RIMCo for providing investment management services to the Russell Funds breached defendant RIMCo's fiduciary duty to the Russell Funds with respect to such compensation.

51.     This Count is brought by plaintiff derivatively on behalf of the Russell Funds against defendant RIMCo for breach of its fiduciary duties with respect to the receipt of compensation as defined by Section 36(b).

52.     The excessive fees received by defendant RIMCo were in breach of its fiduciary duties to the Russell Funds with respect to such compensation.   By reason of the conduct described in this complaint, defendant RIMCo violated Section 36(b).

53.     As a direct, proximate, and foreseeable result of defendant RIMCo's breach of fiduciary duties in its role as investment adviser to the Russell Funds and their investors, the Russell Funds and their shareholders have sustained millions of dollars in damages.

54.     In charging and receiving inappropriate, unlawful, and excessive compensation, and in failing to put the interests of plaintiff, and other security holders of the Russell Funds ahead of its own interests, defendant RIMCo has breached and continues to breach its statutory fiduciary duty to plaintiff in violation of Section 36(b).

55.     Plaintiff seeks, pursuant to Section 36(b)(3), the actual damages resulting from the breach of fiduciary duty by defendant RIMCo, up to and including, the amount of compensation or payments received from the Russell Funds and earnings that would have accrued to plaintiff had that compensation not been paid.

56.     Alternatively, plaintiff seeks rescission of the contracts and restitution of all the excessive fees paid pursuant thereto. *See* ICA section 47(b), 15 U.S.C. §80a-46(a-b).  When a violation of the ICA has occurred, a court may order that the Advisory Agreement between

defendant RIMCo and the Russell Funds, on behalf of the Russell Funds, be rescinded, thereby requiring restitution of all investment management fees paid to it by the Russell Funds from one year prior to the commencement of this action through the date of trial, together with interest, costs, disbursements, attorneys' fees, fees of expert witnesses, and such other items as may be allowed to the maximum permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.      An order declaring that defendant RIMCo has violated and continues to violate Section 36(b) through the receipt of fees from the Russell Funds that breach defendant RIMCo's fiduciary duty with respect to the receipt of compensation.

B.      An order preliminarily and permanently enjoining defendant RIMCo from further violations of the ICA.

C.      An order awarding compensatory damages on behalf of the Russell Funds against defendant RIMCo, including repayment of all unlawful and/or excessive investment management fees paid to it by the Russell Funds or their security holders from one year prior to the commencement of this action through the date of the trial of this case, together with interest, costs, disbursements, attorneys' fees, fees of expert witnesses, and such other items as may be allowed to the maximum extent permitted by law.  Plaintiff reserves the right to seek punitive damages where applicable.

D.      An order rescinding the Advisory Agreement between defendant RIMCo and the Russell Funds, including restitution of the excessive investment management fees paid to defendant RIMCo by the Russell Funds from a period commencing one year prior to the commencement of this action through the date of the trial of this case, together with interest,

costs, disbursements, attorneys' fees, fees of expert witnesses, and such other items as may be allowed to the maximum extent permitted by law.

E.    Such other and further relief as may be just and proper under the circumstances.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

Dated: October 17, 2013                    HUTCHINGS, BARSAMIAN,
                                            MANDELCORN & ZEYTOONIAN, LLP


                                            /s/Theodore M. Hess-Mahan
                                            THEODORE M. HESS-MAHAN
                                            BBO #557109

                                            110 Cedar Street, Suite 250
                                            Wellesley Hills, MA 02481
                                            Telephone: (781) 431-2231
                                            Facsimile: (781) 431-8726
                                            thess-mahan@hutchingsbarsamian.com

                                            ROBBINS ARROYO LLP
                                            BRIAN J. ROBBINS
                                            STEPHEN J. ODDO
                                            EDWARD B. GERARD
                                            JUSTIN D. RIEGER
                                            600 B Street, Suite 1900
                                            San Diego, CA 92101
                                            Telephone: (619) 525-3990
                                            Facsimile: (619) 525-3991
                                            brobbins@robbinsarroyo.com
                                            soddo@robbinsarroyo.com
                                            egerard@robbinsarroyo.com
                                            jrieger@robbinsarroyo.com

                                            Attorneys for Plaintiff

896641