```
 1                UNITED STATES DISTRICT COURT

 2                 DISTRICT OF MASSACHUSETTS

 3                            No. 1:13-cv-12631-WGY

 4

 5

 6   IN RE RUSSELL INVESTMENT COMPANY
     SHAREHOLDER LITIGATION
 7

 8

 9
                          *********
10

11             For Hearing Before:
               Judge William G. Young
12           at Boston College Law School

13

                     Summary Judgment
14

15             United States District Court
               District of Massachusetts (Boston)
16             One Courthouse Way
               Boston, Massachusetts 02210
17             Tuesday, November 15, 2016

18

19                       ********

20

21        REPORTER: RICHARD H. ROMANOW, RPR
                 Official Court Reporter
22           United States District Court
      One Courthouse Way, Room 5510, Boston, MA 02210
23              bulldog@richromanow.com

24

25
```

```
 1                  A P P E A R A N C E S

 2

 3   JENNY L. DIXON, ESQ.
        Robbins Arroyo, LLP
 4      600 B Street, Suite 1900
        San Diego, CA 92101
 5      (619) 525-3990
        Email: Jdixon@robbinsarroyo.com
 6      For Plaintiff

 7

 8   SEAN M. MURPHY, ESQ.
        Milbank, Tweed, Hadley & McCloy, LLP
 9      28 Liberty Street
        New York, NY 10005-1413
10      (212) 530-5688
        Email: Smurphy@milbank.com
11   and
     SEAN T. CARNATHAN, ESQ.
12      O'Connor, Carnathan and Mack, LLC
        Landmark One
13      1 Van de Graaff Drive, Suite 104
        Burlington, MA 01803
14      (781) 359-9002
        Email: Scarnathan@ocmlaw.net
15      For the Russell defendants

16

17

18

19

20

21

22

23

24

25
```

```
 1           P R O C E E D I N G S
 2           (Begins, 10:05 a.m.)
 3           THE CLERK:  Now hearing Civil Matter 13-12631,
 4   McClure versus Russell Commodity.
 5           MR. MURPHY:  Good morning, your Honor, Sean Murphy
 6   from Milbank, Tweed, Hadley & McCloy, for the Russell
 7   defendants.
 8           THE COURT:  And who's for the plaintiff?
 9           MS. DIXON:  Good morning, your Honor, Jenny Dixon
10   on behalf of the plaintiff, McClure, with the law firm
11   of Robbins Arroyo.
12           THE COURT:  Well, let's start with you, Ms. Dixon,
13   and let's see if we can't handle a couple of things and
14   then, um, perhaps I need argument.
15           First of all, insofar as you seek to go forward on
16   behalf of the Russell Multi-Strategy Alternative Fund,
17   that's dissolved, you don't have standing as to that, so
18   that's out, right?
19           MS. DIXON:  Correct, your Honor.
20           THE COURT:  Fine.
21           Second, and I'm just curious, you styled this a --
22   that you want a jury, but I wouldn't have thought,
23   reading this, that this is a jury case.
24           This is a bench trial, isn't it?
25           MS. DIXON:  Yes, your Honor, it is a bench trial.
```

             THE COURT:  Fine.  And when have I scheduled it
   for trial?
             MS. DIXON:  Your Honor, we were just recently
   rescheduled to your docket.  There is no trial date at
   the present.
             THE COURT:  So we'll deal with that now.
             All right.  Now -- thank you.  Thank you.
             (Pause.)
             Well, let me start with the other side and see if
   that will move us along.
             Having gone over the papers I think there's much
   to your argument except I think that as to Fall-Out
   benefits and profitability she ought to be able to go
   forward with her case.  So why don't you focus on that.
             You disagree with that?
             MR. MURPHY:  I do disagree with that, your Honor,
   respectfully.
             So this case is unusual.  There's a lot of these
   cases out there right now under Section 36(b) of the
   1940 Act and this case is unusual in the sense of how
   narrow the Fall-Out benefits issue is and how clear it
   is not a Fall-Out benefit as a matter of law.
             As I understand the plaintiff's argument, there's
   a single Fall-Out benefit.  They say that the
   administrator, the defendant administrator, RFSC, gets a

1  Fall-Out benefit of about $8 million in what I'll call
2  "avoidance costs," in other words they don't have to
3  spend money on administrative services to institutional
4  clients that they could otherwise charge for.  That's
5  not a Fall-Out benefit as a matter of law, your Honor.
6      If you look at the test for Fall-Out benefits set
7  up by *Krinsk* in the Second Circuit back in the 1980s,
8  the test is a but-for test, it's very exacting, you have
9  to show that's a benefit that --
10     THE COURT:  Well, much as I respect the Second
11 Circuit, that's persuasive but not controlling.
12     MR. MURPHY:  I totally agree, your Honor, but that
13 -- the but-for test has been repeated not just in the
14 Second Circuit, it's been widely repeated by courts
15 across the country.
16     THE COURT:  Not in the first circuit.
17     MR. MURPHY:  Not in the First Circuit -- not in
18 the First Circuit but widely accepted that the test is
19 but-for, some courts say as a result of, but it's a very
20 exacting test, and for this one benefit, your Honor.  I
21 have two responses.
22     First, it's not a Fall-Out benefit as a matter of
23 law, and I would point again to -- not a First Circuit
24 case but the *Gallus* case, 497 F. Supp. 2d at 981, it's
25 cited in our brief.  There the District Court, at the

1  summary judgment stage, rejected a nearly identical
2  Fall-Out benefit and said it's not a Fall-Out benefit as
3  a matter of law.
4       The second point I would make, your Honor, is that
5  even if you accept it's a Fall-Out benefit -- and again
6  there's a case on point that says it's not, but even if
7  you would --
8       THE COURT:  I guess my concern, and I'm following
9  your argument here, but my concern is the more factual
10 concern on summary judgment, that here I have to accept,
11 as you acknowledge, that they --
12      They get this $8 million profit, right?
13      MR. MURPHY:  It's more of a cost avoidance I think
14 is the argument.  I think what they're saying is --
15      THE COURT:  Very well, and you're right, an $8
16 million cost avoidance, savings.  Now, you say -- so
17 accepting that -- accepting that, does that give us a
18 triable issue here?
19      MR. MURPHY:  Well, no, I'm not -- I'm accepting
20 that's the allegation, but I'd say, as a matter of law,
21 that it's not a Fall-Out benefit if you follow the
22 reasoning of the *Gallus* case, and again it's not binding
23 but at least one court has rejected it at the summary
24 judgment stage.  So that's one argument.
25      Two, is even if you do not -- following my

```
 1    argument if you disagree with that court, the next stage
 2    of the argument is how material is it to the analysis,
 3    right?  You can't just say, "Well, they made a dollar
 4    and that would have changed the analysis," if you look
 5    at the amount of the advisory fees they're substantial
 6    in dollars, I admit that, and you have to say, "Well,
 7    that $8 million is a benefit across the entire complex
 8    of mutual funds managed by Russell, and you have to say
 9    if the board that approved these fees, right, they're
10    approved by an independent board of directors -- and you
11    should defer to their business judgment unless there's
12    something to impugn the process, how would that $8
13    million have affected the board, would they have said,
14    "Well, across all 50 funds that $8 million was so
15    substantial they would have come out differently"?  You
16    have to show it's material to the board's analysis or
17    your analysis in assessing the fees, and to do that what
18    you're supposed to do under the law is say, "How much of
19    that $8 million is it for the funds that are being
20    challenged here?"  There are 10 funds at issue.
21          THE COURT:  Yes, now, um, for argument, I accept
22    all of that.
23          MR. MURPHY:  Uh-huh.
24          THE COURT:  And so we ought to have a trial.
25          (Laughter.)
```

```
 1        THE COURT:  And you'll tell me all that and you'll
 2   support it and I will be persuaded, you hope.  But what
 3   I see as the force of that argument, I just -- I have to
 4   take -- this is summary judgment, I have to take every
 5   reasonable inference her way, that's my problem here,
 6   and that's why I said, "Well, when are we going to trial
 7   on this?"  It's before me.  I'm available.  We can get
 8   this to trial pretty quickly.  And this seems to -- the
 9   facts don't seem to be in dispute here or are they in
10   dispute?
11        MR. MURPHY:  Well, I mean -- so I would argue
12   that, um, they are in dispute at some level, but I would
13   say, even if I lost those, there's still not a genuine
14   issue of material fact in dispute because you just said
15   it, your Honor, you just said it, we're not disputing
16   the facts.
17        THE COURT:  You can't at this stage, I understand
18   that.
19        MR. MURPHY:  Yeah.  So I would say that even if
20   you accept their argument, as a matter of law you can
21   say it's not a Fall-Out benefit.
22        THE COURT:  A few minutes on profitability.
23        MR. MURPHY:  So profitability, your Honor, I think
24   is an even easier one.  There if you look at the profit
25   margins calculated by my client, the defendant, and
```

```
 1   given to the board, if you look at those profit margins
 2   you can compare those to cases under 36(b) where courts
 3   have found profit margins to be reasonable in the same
 4   range, and there, your Honor, I would point to the
 5   Schuyt vs. T. Rowe price case where profit margins of 77
 6   percent were found to be reasonable.  All of my client's
 7   profit margins are below that except a couple that are
 8   just above it, so you're in the range.  That's not in
 9   dispute, that's not going to change a trial.
10          So what is the plaintiff's argument?  The
11   plaintiff's argument is not that those margins are above
12   what other courts have found to be reasonable, their
13   argument, your Honor, is they're putting on an expert to
14   say, "Well, we've recalculated the profit margins, we
15   understand that your profit margins are consistent with
16   GAAP, the Generally Accepted Accounting Principles, but
17   we're going to say there's no accounting rules that
18   apply, that we can calculate them however we want and
19   come up with really high profit margins."  And they're
20   under seal, your Honor, so I'm not mentioning, for
21   confidentiality reasons, what they are, but they're much
22   higher than the ones that are calculated using Generally
23   Accepted Accounting Principles.
24          THE COURT:  But you see, um, we're all in the same
25   ballpark here, what you're saying to me comes at no
```

1  surprise, it's just that that sounds like factfinding to
2  me.  I -- yeah, they're going to put on an expert who's
3  going to try to say what you say he's going to try to
4  say and I suppose maybe I'll listen to it.  Maybe, from
5  your point of view, that's not a reliable method on
6  reliable facts and under Rule 702 I just won't hear it,
7  maybe it will go off that way, but it sounds like
8  factfinding, and since I have that expert, so-called,
9  opinion, that sounds like that gets them a trial.
10      MR. MURPHY:  In fairness, your Honor, so this
11  issue came up in the ***AXA*** case, ***Sivolella***, and it came up
12  in the ***Hartford*** case, and I should disclose that I
13  represented Hartford and AXA in both of those cases and
14  I think as you know I'm in the middle of the Hartford
15  trial right now, so I appreciate at summary judgment the
16  judge found that to be a fact issue, I concede that, but
17  I will say that I think the record is much clearer here
18  in terms of them conceding that our profit margins are
19  consistent with Generally Accepted Accounting
20  Principles.  And we also have a ruling from the judge,
21  Judge Sheridan in the District of New Jersey, where he
22  rejected this argument, I would say as a matter of law,
23  and said that "The defendant's method of calculating
24  profitability is consistent with accounting methods," in
25  the exact context.

```
 1          THE COURT:  All right.
 2          MR. MURPHY:  And I would submit that you don't
 3  need a trial to reach that same conclusion in light of
 4  where Judge Sheridan came out.
 5          THE COURT:  All right.  I hear you and I
 6  understand.  Let me hear from Ms. Dixon.
 7          Ms. Dixon, if I let it go forward on those two and
 8  roomed out the rest of it, you're fine with that, aren't
 9  you?
10          MS. DIXON:  Well, your Honor, we do believe that
11  there are factual disputes as to the other issues as
12  well as --
13          THE COURT:  But you're -- as a practical matter
14  you're fine with it, you get your trial, um, and, you
15  know, if I get some sort of rush of blood to the brain
16  once we really see, um, that there are supposedly
17  improprieties, um, it just seems to me they have you on
18  everything else but those two.
19          THE COURT:  Well, your Honor, we respectfully do
20  disagree on a number of factors.  I do see your point.
21  I think there are questions of fact, as your Honor has
22  noted, that go to many of these points.
23          THE COURT:  But go to those two?
24          MS. DIXON:  Undoubtedly go to those two, and we
25  believe and, um, would go to the other points as well,
```

```
 1  and, you know, in particular there's both -- the
 2  profitability for the advisory claims as well as the
 3  profitability for the administrative claims.  So I
 4  believe that both of those issues are in play and would
 5  be appropriate for trial as well as Fall-Out benefits
 6  for both as well.
 7         Um --
 8         THE COURT:  But that's the easy part, that's the
 9  part that I'm signaling, um, you probably squeak by
10  summary judgment, but the rest of it they win, don't
11  they, as a practical matter?
12         THE COURT:  Well, when you say "the rest of it,"
13  your Honor, you're referring to -- because -- you recall
14  the standard is all relevant circumstances, um, and
15  facts that go to address the disproportionality of the
16  fees.
17         The cost issue, for example, bears heavily on the
18  profitability.  You look at disproportionality, one way
19  to do it is defendants want to -- they've argued an
20  array of services in their papers, but the more concrete
21  way to look at what services do the defendants provide
22  is what costs do they incur in providing them?
23         THE COURT:  Well, let's grab onto it this way.  He
24  started out his argument, arguing for a determination as
25  a matter of law, by focusing on how I should view the
```

```
 1    board's determination, and he's right on that.
 2         Won't you give him that?
 3         MS. DIXON:  Well, *Jones* says that even with an
 4    impeccable board process -- and there are disputed facts
 5    on that issue in the record, but even with an impeccable
 6    board process there's still -- you still look at the
 7    substance of the fees.  And here, your Honor, looking
 8    at --
 9         THE COURT:  But I'm prepared to do that.  Do you
10    see what I'm saying?
11         MS. DIXON:  Yes, your Honor.
12         THE COURT:  I'm saying that I think he's right as
13    to the degree of deference, um, to be given to the
14    board, as a matter of law, and then I'm going on to say,
15    notwithstanding his able argument, that at least as to
16    the nature and quality of the services, the Fall-Out
17    benefits, and the profitability, we ought have a prompt
18    jury-waived trial.
19         And you're fine with that, aren't you?
20         MS. DIXON:  Yes, your Honor.
21         THE COURT:  All right, fine, that's the order.
22         When are we going to go to trial?  We're ready,
23    aren't we, on this case?
24         MR. MURPHY:  Um --
25         THE COURT:  I mean you can't be at two places at
```

```
 1    once --
 2         (Laughter.)
 3         THE COURT:  -- and I certainly want you to ably
 4    defend them, um -- and don't take any comfort from this,
 5    but the problem is -- well, it isn't a problem, it's
 6    that I am faithful, I think, to the Rule 56 charge, I've
 7    given you every reasonable inference.  And so we're
 8    clear as to the degree of deference I'm going to give to
 9    the board.  I think they get a trial.  It's not a long
10    trial.
11         Is it?
12         MR. MURPHY:  Your Honor -- and I don't know if you
13    envision any sort of ruling beyond what you're saying
14    today, but if --
15         THE COURT:  I do not.
16         MR. MURPHY:  Okay.  So if we're clear that we're
17    only trying, um, the several factors, which I'm trying
18    to think are Fall-Out benefits and profitability --
19         THE COURT:  And quality of services.
20         MR. MURPHY:  -- and quality of services, so that
21    would be a very abbreviated trial.  And I can speak from
22    experience here.  So in **AXA** we tried all of the
23    ***Gartenberg*** factors and it was 7 weeks.  In ***Hartford***
24    we're trying -- the judge only made the board factor and
25    we did the trial in four days.  So I would say four
```

```
 1  days, um, we could shoot for and if we need more time we
 2  can tack something on on the back end.
 3          THE COURT:  Jury-waived, that's easy for me.  So
 4  when are you ready?  You're talking my -- I like what
 5  you're saying.
 6          (Laughter.)
 7          THE COURT:  What do you say, are you people ready?
 8          MS. DIXON:  Well, I would need to consult with my
 9  colleagues, your Honor.
10          THE COURT:  That doesn't work here.
11          MS. DIXON:  Okay.
12          THE COURT:  You've got a cell phone, go out in the
13  hall, you can consult with whoever you want to consult
14  with, but don't go away, we'll call you again.  So
15  that's the order of the Court, it's allowed in part and
16  denied in part, and we will call the case a second time
17  to see about the trial schedule.
18          MR. MURPHY:  And, your Honor, just one point.  We
19  do want some type of pretrial briefing built in.
20          You're not suggesting a trial next week or
21  anything?
22          THE COURT:  Um, no, I don't think so, but I'm
23  available.
24          MR. MURPHY:  Okay.  Okay, your Honor.
25          MS. DIXON:  Your Honor, do you have a time period
```

```
 1   that you were thinking of, January, February, or are we
 2   talking before Thanksgiving?  Because there are a number
 3   of witnesses, experts --
 4           THE COURT:  Oh, but, you know, planes fly,
 5   subpoenas can be issued, and so come back and say "the
 6   judge is eager to go to trial on this important case"
 7   and we'll see where we are.
 8           Thank you very much.
 9           (Recess, 10:25 a.m.)
10           (Resumed, 11:14 a.m.)
11           (Mr. Murphy not present.)
12           THE CLERK:  McClure versus Russell Commodity.
13           THE COURT:  Okay, and now I'm calling my bluff
14   here, so as a serious matter when do you want to go to
15   trial?
16           MS. DIXON:  Late February, early March, your
17   Honor, that the parties have conferred and checked our
18   schedules.
19           THE COURT:  I'll put you on the March running
20   trial list?
21           MS. DIXON:  That sounds wonderful.
22           THE COURT:  Fine.  I do two weeks to file a joint
23   proposed case management schedule between here and
24   there, you're on the March running trial list, which
25   means by the first Monday of February I want, under our
```

```
1    rules, a final pretrial memorandum.  And the rule
2    doesn't make it clear whether it's joint, it is joint,
3    and that costs you a lot of money, you have to list all
4    your witnesses, all your exhibits, that type of thing.
5    And now -- yeah, I think that's it.  Thank you very
6    much.
7            MS. DIXON:  Thank you, your Honor.
8            MR. CARNATHAN:  May I just clarify, your Honor, is
9    that nine full trial days?
10           (Interruption by Court Reporter.)
11           THE COURT:  Yes, would you identify yourself.
12           MR. CARNATHAN:  I'm sorry, your Honor, Sean
13   Carnathan for the Russell defendants, pinch-hitting for
14   Mr. Murphy.
15           THE COURT:  Yes, Mr. Carnathan, 9:00 to 1:00 trial
16   days, but as you know, um, and we have done a study,
17   that's within 40 transcript pages of the so-called
18   "full-day," 10:00 to 4:00, and I start promptly at 9:00.
19   Thank you both.
20           MR. CARNATHAN:  Thank you, your Honor.
21           THE COURT:  We'll recess.
22           MS. DIXON:  Your Honor, one moment?
23           THE COURT:  Yes.
24           MS. DIXON:  Previously there was discussion as to
25   the number of trial days, counsel has conferred and also
```

```
 1    believed, would we submit that in our papers?
 2         THE COURT:  It's required in the final pretrial.
 3         MS. DIXON:  Right.
 4         THE COURT:  Because hope springs eternal that you
 5    might settle.  If you did not settle entirely,
 6    conceivably you would settle partially.  The rule says
 7    you tell me the number of trial days and we will work it
 8    out at the final pretrial.
 9         MS. DIXON:  Thank you very much, your Honor.
10         THE COURT:  Thank you both.
11         We'll recess.
12         (Ends, 11:15 p.m.)
```

C E R T I F I C A T E

   I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do hereby certify that the foregoing record is a true and accurate transcription of my stenographic notes before Judge William G. Young, on Tuesday, November 15, 2016, to the best of my skill and ability.

/s/ Richard H. Romanow 11-17-16
_____
RICHARD H. ROMANOW    Date